NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MARIA ELENA STITELER (Cal. Bar No. 296086)
JEREMIAH LEVINE (Cal. Bar No. 288377)
Assistant United States Attorneys
General Crimes Section
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6148/8323
Facsimile: (213) 894-0141
E-mail: Maria.Stiteler@usdoj.gov
Jeremiah.Levine@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

TRACE JEVON JONES,
aka "Trace Jones,"
aka "Million,"
aka "Million Dollar,"
aka "Bee,"

Defendant.

No. CR 18-00652-VAP-1

GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT TRACE JEVON JONES; DECLARATION OF MARIA ELENA STITELER

Sentencing Date: January 19, 2021
Sentencing Time: 10:00 a.m.
Location: Courtroom of the Hon. Virginia A. Phillips

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Maria Elena Stiteler and Jeremiah Levine, hereby files its sentencing position for defendant Trace Jevon Jones ("defendant").

//

//

//

This sentencing position is based upon the attached memorandum of points and authorities, the Declaration of Maria Elena Stiteler and attached exhibits, the Presentence Investigation Report, Recommendation Letter, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 29, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

MARIA ELENA STITELER
JEREMIAH LEVINE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

As early as November 2016, and again from May through July 2018, defendant engineered a conspiracy to fraudulently obtain American Express National Bank ("American Express") credit cards in the name of true account holders and to use those credit cards to buy luxury goods at high-end retail stores in Los Angeles, Beverly Hills, and Costa Mesa.  In furtherance of this conspiracy, defendant recruited co-conspirators, used victims' personal identifying information ("PII") to obtain credit cards and create false IDs, directed and monitored his co-conspirators' purchases, and paid them in goods and cash.  Altogether, defendant and his five co-defendants defrauded American Express of over half a million dollars -- money spent on expensive shoes, bags, and other luxuries.  Based on his conduct, defendant pleaded guilty to Counts 1 and 25 of a 28-count indictment, which charge him with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count 1), and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count 25).

In the Presentence Investigation Report ("PSR"), the United States Probation & Pretrial Services Office ("USPO") calculated a total offense level of 22 and a criminal history category of VI, resulting in a Sentencing Guidelines range of 84 to 105 months' imprisonment on Count 1, plus a 24-month mandatory consecutive sentence on Count 25.  (Dkt. 328 ("PSR").)  The USPO also filed its sentencing letter, in which it recommends that the Court depart downward to impose a sentence of:  (1) a term of 36 months' imprisonment on Count 1, and the mandatory consecutive 24-month term on Count 25, for a total term of 60 months' imprisonment; (2) a

three-year term of supervised release on Count 1 and a one-year term of supervised release on Count 25, to run concurrently; (3) a mandatory special assessment of $200; and (4) $521,128.05 in restitution to American Express.  (Dkt. 327 ("Recommendation Letter").)

For the reasons set forth below, the government concurs with the USPO's calculations but disagrees with its recommendation.  Instead, the government recommends a two-level downward variance based upon the factors in 18 U.S.C. § 3553(a), bringing the total offense level down to 20.  Based on a total offense level of 20 and a Criminal History Category of VI, the Guidelines range is 70-87 months for Count 1 and a mandatory consecutive 24-month term for Count 25.  The government respectfully requests that the Court sentence defendant to 94 months' imprisonment, a four-year term of supervised release, a mandatory special assessment of $200, and restitution of $521,128.05.

**II.   DEFENDANT'S CONDUCT**

Beginning on at least November 2016 and extending through at least July 2018, defendant masterminded a scheme to fraudulently obtain and use American Express credit cards for unauthorized purchases at high-end retail stores.  (PSR ¶¶ 11, 13-14, 51-52; Dkt. 305 ("Plea Agreement") ¶ 15.)  To carry out his scheme, defendant enlisted multiple co-conspirators, including many of the co-defendants here.  (See PSR ¶ 52; see also infra Section III.A.)  Specifically, the scheme operated as follows:  defendant would obtain the credit card information and other PII of true American Express account holders.  (See infra Section III.A.)  Defendant and his co-conspirators would then use this information to convince American Express to send out replacement credit cards in the victims' names.

(PSR ¶ 12(a)-(b).) Defendant and his co-conspirators also would use the PII to obtain false identification documents in the victims' names. (PSR ¶ 12(c); see also infra Section III.A.) Defendant and his co-conspirators then used the fraudulently-obtained credit cards to make unauthorized purchases at luxury stores such as Barneys, Goyard, and Gucci. (Plea Agr. ¶ 15; PSR ¶¶ 12(d), 14-37.)

During and in relation to the conspiracy to commit bank fraud, defendant knowingly used without legal authority a means of identification of another person, namely, the name and credit card account number of victim M.B., which defendant knew belonged to a real person. (Plea Agr. ¶ 15; PSR ¶ 18.)

In the Plea Agreement, defendant admitted that the total actual financial loss to American Express that resulted from defendant's participation in the scheme was $521,128.05. (Plea Agr. ¶ 15; PSR ¶¶ 38-39.) Altogether, defendant and his co-conspirators were responsible for attempted losses of $624,241.81. (PSR ¶ 38.)

**III. THE PRESENTENCE REPORT AND GUIDELINE CALCULATION**

In the PSR, and in accordance with the Plea Agreement, the USPO determined that defendant's base offense level as to Count 1 is 7, pursuant to USSG § 2B1.1(a)(1). (PSR ¶ 47; Plea Agr. ¶ 17.) Pursuant to USSG § 2B1.1(b)(1)(H), the USPO applied a fourteen-level increase because the offense involved intended losses totaling $624,241.84, of which $521,128.05 were successful.[1] (PSR ¶ 49.) Pursuant to USSG § 3B1.1(a), the USPO further applied a four-level increase because the defendant was an organizer or leader of a

[1] In the Plea Agreement, the parties agreed that because the loss was more than $250,000, there was at least a twelve-level increase for this specific offense characteristic. (Plea Agr. ¶ 17.)

criminal activity that involved five or more participants or was otherwise extensive. (PSR ¶¶ 51-52.) After a three-point reduction for acceptance of responsibility under USSG § 3E1.1(a), the USPO calculated a total offense level of 22 as to Count 1. (PSR ¶¶ 57-58.) As to Count 25 (the aggravated identity theft count), the USPO noted that the guideline sentence is a statutorily required two-year term of imprisonment, to be served consecutively. (PSR ¶ 59.)

The USPO found that defendant had fifteen criminal history points,[2] placing him in Criminal History Category VI. (PSR ¶¶ 63-72.) Based on a total offense level of 22 and a criminal history category of VI, the USPO determined that defendant's Guidelines range is 84-105 months' imprisonment on Count 1, plus the mandatory consecutive two-year term of imprisonment on Count 25. (PSR ¶¶ 114-116.) The USPO further determined that the applicable Guidelines range for supervised release is 2-5 years on Count 1 and 1 year on Count 26, to run concurrently. (Id. ¶¶ 118-120.)

The USPO also noted that a mandatory $200 special assessment applies. For restitution, the USPO determined that pursuant to 18 U.S.C. § 3663A and in accordance with the Plea Agreement, the Court should order payment of $521,128.05 in restitution to American Express. (Id. ¶¶ 124, 127-130; Plea Agr. ¶ 10.)

The government does not object to the USPO's calculations.

---

[2] The government objects to the PSR's lack of description about the conduct underlying defendant's 2016 conviction. (PSR ¶ 69.) This conviction stemmed from defendant's 2016 arrest for attempting to purchase a $34,250 watch at Gearys in Beverly Hills with a fraudulent American Express credit card. (Decl. of Maria Elena Stiteler ("Stiteler Declaration"), Ex. A (2016 Arrest Rpt.) at 4.) Defendant used a credit card and California driver's license in his own name; however, the credit card number was fraudulent. (Id.) Hereinafter, all cited exhibits are attached to the Stiteler Declaration.

**A.  Defendant Was an Organizer and Leader of a Criminal Activity Involving Five or More Persons**

As the USPO correctly found (PSR ¶¶ 51-52), the four-level role enhancement for organizing or leading a conspiracy involving five or more participants applies here.  USSG § 3B1.1(a).  For the four-level enhancement to apply, the government must show by the preponderance of the evidence that the criminal activity involved "five or more participants" or was "otherwise extensive" and "that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime."  United States v. Yi, 704 F.3d 800, 807 (9th Cir. 2013); United States v. Avila, 95 F.3d 887, 889 (9th Cir. 1996) (preponderance standard).  Once the district court finds that the government has met its burden of proving the requisite facts, it court must apply the appropriate adjustment under § 3B1.1.4.  United States v. Feinman, 930 F.2d 495, 500 (6th Cir. 1991); United States v. Burgos, 324 F.3d 88, 92 (2d Cir. 2003).  In assessing the enhancement, courts consider several factors:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, Cmt., App. n.4.  If there are five or more members of the conspiracy, the enhancement may be proper even if the defendant exercises management authority over only one other participant.  United States v. Barnes, 993 F.2d 680, 685 (9th Cir. 1993).

The four-level enhancement applies here.  First, the conspiracy involved five or more people, as evidenced by the fact that defendant and five co-defendants have all pleaded guilty in this case.  See United States v. Smith, 719 F.3d 1120, 1126 (9th Cir. 2013) ("Any person who knowingly abets the defendant's conduct qualifies as a 'participant.'").  Moreover, defendant both organized the conspiracy and exercised control over others in the conspiracy.  As detailed in the PSR, defendant recruited co-conspirators, provided them with credit cards, victim information, or fraudulent identification documents, and instructed them how to act, what to buy, and how much to spend.  (PSR ¶¶ 13, 52.)  Defendant also handled the money: he personally profited from the conspiracy and also paid members of the conspiracy or directed them to keep portions of their fraudulent purchases as payment.  (See id.; see also infra at 6-8.)

[Page content redacted]

[redacted]

Whatsapp messages between defendant and co-defendant Davion Ellis demonstrate how defendant directed Ellis and Beal. For example, defendant (username "Bee the Plug"), gave Ellis (username "Cayden") victim PII (Ex. G at USAO_820), guided Ellis in obtaining a false identification in victims' name (id. at USAO_812-814), and instructed Ellis on how to make purchases with the victim's fraudulently obtained credit card (id. at USAO_817-819). Throughout their conversation, defendant directed and controlled Ellis. (See, e.g., id. at USAO_812-14, 820-21, 823.)

Given defendant's organization and direction of the conspiracy (which included at least five persons), the Court should apply the four-level aggravating role enhancement.

**IV. THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The government recommends that the Court impose a two-level downward variance and sentence defendant to a term of imprisonment at the low-end of the resulting Guidelines range: 94 months (70 months on Count 1 followed by a mandatory consecutive two-year term on Count 25). The government further requests that that the Court impose a four-year term of supervised release, restitution in the amount of $521,128.05, and a $200 special assessment. This recommended

sentence is sufficient, but not greater than necessary, to address defendant's criminal conduct, taking into account all the factors the Court must consider under 18 U.S.C. § 3553(a).

As noted above, the USPO recommends that the Court depart downward to impose a total term of imprisonment of 60 months, well below the low-end of the Guidelines range, and the equivalent of a nine-level downward variance. (Dkt. 318 (Disclosed Rec. Ltr.) at 2). For the reasons explained below, this sentence is insufficient to address the § 3553(a) factors.

**A. Nature and Circumstances of the Offense**

The nature and circumstances of defendant's offenses are considerably aggravating. See 18 U.S.C. § 3553(a)(1) & (2)(A). Defendant orchestrated a scheme that resulted in over $500,000 in actual losses to American Express; in doing so, defendant obtained and used at least seven individual victims' PII to purchase luxury goods. This was not a one-time event or an isolated lapse of judgment. Defendant participated in this scheme at least as early as November 2016, and then coordinated numerous purchases with five co-conspirators between May and July 2018, many of whom he recruited.

Further, while the ultimate victim here was American Express (because it reimbursed the individual victims), stealing and misusing victims' PII and account information is a serious nationwide problem that can have lasting impact on individual victims. See, e.g., Ben Luthi, Credit Card Fraud v. Identity Theft: What's the Difference?, U.S. News & World Report, Aug. 8, 2019, available at https://creditcards.usnews.com/articles/credit-fraud-vs-identity-theft-whats-the-difference; Identity Theft: The Aftermath, Identity Theft Resource Center (2017) at 7-15, available at

https://www.idtheftcenter.org/images/page-docs/Aftermath_2017.pdf (detailing the short- and long-term financial, psychological, and physical impact of identity theft on victims). Victims of identity theft often must report fraudulent activity or accounts to their card issuers and the credit agencies, monitor their monthly statements, and vigilantly monitor their credit. Identity Theft: The Aftermath at 15; Federal Trade Commission, Consumer Information, Identity Theft, available at https://www.consumer.ftc.gov/topics/identity-theft. Even then, victims often face hurdles in removing fraudulent or derogatory activity from their credit records, which can have lasting impact on their credit scores and ability to qualify for credit in the future. Identity Theft: The Aftermath at 8. Aside from the substantial impact on direct victims, identify theft causes large losses to credit card issuers like American Express, which in turn leads to higher fees and charges for all customers. See, e.g., Chris Fleisher & Andrew Conte, Credit Card Hacks Cost Consumers Millions — One Way or Another, Trib Total Media, Dec. 13, 2014, http://triblive.com/news/editorspicks/7289249-74/card-fraud-credit.

Further, defendant's role in the offense, as noted above, is aggravating. Defendant created and led a scheme that required sophisticated planning and coordination on his part. He coordinated with other criminals in Los Angeles and internationally to obtain victims' credit card information and PII and to create false IDs; defendant recruited other co-conspirators and directed them to collect victims' credit cards and then make fraudulent purchases with those credit cards; and defendant carefully tracked the purchases to ensure approval by American Express. Finally, defendant engaged in

this scheme out of greed, using victims' stolen information to obtain luxury bags, shoes, jewelry, and other goods for his own benefit.

**B. Defendant's History and Characteristics; Need to Afford Adequate Deterrence and Protect the Public from Defendant's Further Crimes**

Defendant's history and characteristics present both mitigating and aggravating factors. In aggravation, defendant's criminal history raises significant concerns about his recidivism and accentuates the need for a significant sentence to impress upon him a respect for the law, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a)(2)(A)-(C). Defendant's criminal history demonstrates both a propensity for recidivism and a pattern of escalation. (PSR ¶¶ 63-72.) Defendant has felony convictions for burglary, grand theft property, use of access account information without consent, and identity theft. (Id.) Previous terms of imprisonment failed to deter him from engaging in criminal conduct. Moreover, defendant has previously been convicted of strikingly similar crimes: using a victim's PII (in 2012) and credit card fraud (in 2012 and 2016). (PSR ¶¶ 68-69; see also Ex. A (2016 Arrest Rpt.).) Despite being prosecuted and sentenced for those crimes, defendant not only continued to commit additional fraud using victims' credit cards but expanded the scope of his operation, recruiting several co-conspirators. As a result, defendant was able to make larger purchases while distancing himself from those purchases and accordingly evading detection. Despite being arrested in October 2016 for attempting to use a fraudulent American Express credit card to purchase a luxury watch (Ex. A (2016 Arrest Rpt.) at 4), just more than one month later and while on probation, defendant

made another fraudulent credit card purchase that constitutes one of the charges in this case (Plea Agr. ¶ 15; PSR ¶ 14).

Defendant's actions after being indicted in this case only underscore his high risk of recidivism. Defendant admitted that at least as early as April 2019, he knew there was a warrant for his arrest and was encouraged to turn himself in. (Ex. H (Interview Rpt.) at 1-2.) Despite this, defendant remained a fugitive for months before his arrest in September 2019. (See Dkt. 143.) When defendant ultimately was arrested, he was carrying a false driver's license, showing that his knowledge of pending criminal charges did not abate his criminal conduct. (See Ex. I (Arrest Rpt.) at 1.)

That said, defendant's criminal history -- while serious -- does not involve any acts of violence, weapon-related crimes, or drug crimes, and several of his criminal history points come from shoplifting convictions from 2007 and 2008. (See PSR ¶¶ 63-69.)

Further, there are significant mitigating factors in defendant's background, including his family background and mental health struggles. (PSR ¶¶ 83-93; 96; 98-105.) While the government will not lay out those facts fully here, the PSR details defendant's difficult upbringing, which was marked with abandonment, instability, severe physical and emotional abuse, homelessness, and other substantial trauma. (PSR ¶¶ 83-93.) That some of those issues (homelessness and instability) carried into defendant's adulthood and at times have affected his mental health is regrettable but not surprising. While certainly not an excuse for his crimes, defendant's substantial challenges help illuminate them.

Further, this is defendant's first federal charge and by far the longest term of imprisonment he has faced (his longest prior term of

imprisonment was only two years). As such, the substantial term the government has recommended here should be sufficient but not greater than necessary to deter him from committing additional crimes.

Taking these factors into consideration, the government recommends a two-level downward variance and a sentence at the low end of the resulting Guideline range, for a 94-month total term of imprisonment on both counts. A 94-month sentence appropriately reflects the nature and severity of defendant's conduct, the need for the sentence to afford adequate deterrence and protect the public against this kind of serious fraud and identity theft, and the need to ensure respect for the law. This sentence would be substantial for defendant in that it is longer than any of his previous sentences, but this is proper given the record as a whole.

**C. The Need to Avoid Unwarranted Sentencing Disparities**

In addition to the factors above, the Court must consider the need for the sentence to avoid unwarranted sentence disparities among similarly situated defendants. Here, defendant is not similarly situated to the other co-defendants.[3] As the leader and organizer of the conspiracy, defendant was most culpable and responsible for the most losses. He also personally profited more. Moreover, defendant has a significantly higher criminal history category (VI) than the other defendants, most of whom fall into criminal history category I. Finally, while the other defendants chose to accept responsibility early [redacted], defendant

[3] The Court sentenced co-defendants Davion Raymone Ellis (three-year imprisonment and four-year term of supervised release), Cherelle Daire Beal-Ellis (one-day imprisonment and three-year term of supervised release), and Miranda Clare Hensley (one-day imprisonment and three-year term of supervised release). Sentencing proceedings for Terry Ellis, Jr., and Johnathan Randall Ross are pending.

chose to remain a fugitive, despite knowing he had been criminally charged. As a result, the government's recommended sentence of 94 months' imprisonment, while significantly higher than the sentences the other defendants face, is not unwarranted.

**D. The Court Should Impose a Four-Year Term of Supervised Release**

The government further submits that a four-year term of supervised release is necessary with the special conditions recommended by the USPO, including mental health counseling and drug testing, to help defendant overcome the health issues described in the PSR. This will help reduce the risk of recidivism and accordingly protect the public from defendant's future crimes.

The three-year term recommended by USPO is insufficient given defendant's lengthy criminal history, repeated probation violations, and the need for defendant to receive supervision and mental health treatment. Indeed, a three-year term of supervised release is less than the term of supervised release that the Court imposed for least one of the less culpable co-defendants in this case (Davion Ellis, who received a four-term of supervision). (Dkt. 238.) In light of defendant's higher culpability, more significant criminal history, and the need to protect the public from his future crimes, the Court should impose a four-year term of supervised release.

**E. Restitution**

Pursuant to 18 U.S.C. § 3663A, the government seeks $521,128.05 in restitution to be paid to American Express. The government submits that defendant should be held jointly and severally liable for this amount with co-defendants, to the extent of the co-defendants' individual liabilities.

Based on the USPO's review of defendant's financial condition, the government agrees that defendant lacks the ability to pay restitution immediately and in full at this time. Consequently, the government requests that the Court make a finding that, in the interest of justice, restitution be paid in installments in accordance with the schedule set forth in the USPO's recommendation letter. However, to ensure the ongoing enforcement of the mandatory restitution order, the government respectfully requests that the Court also order the following:

1) Defendant's criminal restitution debt will be referred to the Treasury Offset Program through the procedures set forth in 31 U.S.C. §§ 3720A and 3716 to offset funds otherwise payable to the defendant from any federal agency, including the Internal Revenue Service and the Social Security Administration, to apply those funds to defendant's outstanding fine or restitution balance until defendant's liability to pay any fine or restitution order has expired or been satisfied;

2) The defendant shall notify the Financial Litigation Section of the United States Attorney's Office for the Central District of California before transferring any interest in property, owned directly or indirectly by defendant, including any interest held or owned under any other name or entity, including trusts, partnership and/or corporations; and

3) The United States Probation & Pretrial Services Office shall preserve and provide the Financial Litigation Section of the United States Attorney's Office for the Central District of California with all the financial documentation relied upon in the preparation of the Presentence Report, including any net worth and cash flow statements completed by the defendant.

## V. CONCLUSION

For the foregoing reasons, the government requests that the Court sentence defendant to 94 months' imprisonment; a four-year term of supervised release; a $200 special assessment; and $521,128.05 in restitution.